IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RENE S. RYMAN, individually, and as
personal representative and next-of-kin of
Lowell Edward Ryman, Deceased,

      Plaintiff,

vs.                                                   Case No. CIV-08-0372 WDS/RLP

REGENTS OF THE UNIVERSITY
OF CALIFORNIA f/d/b/a LOS ALAMOS
NATIONAL LABORATORY, THE ZIA
COMPANY and THE ZIA COMPANY,

      Defendants.

### DEFENDANT THE ZIA COMPANY'S RESPONSE
### TO PLAINTIFF'S MOTION TO EXTEND DEADLINES

Defendant The Zia Company ("Zia") submits the following Response to Plaintiff's Motion to Extend Deadlines [Doc. 161].

**I.    INTRODUCTION.**

Lowell Ryman died on April 23, 2005 from multiple myeloma. *See* Second Amended Complaint ("Complaint"), ¶18. [Doc. 128]. Although his daughter Rene Ryman had not had any contact with her father for most of her adult life, she reconnected with him before his death and filed suit against the Regents of the University of California and Zia on April 8, 2008, alleging that his multiple myeloma was caused by his exposure to ionizing radiation as a 9-12 year old while residing in Los Alamos from 1950 to 1953. *Id.* Ms. Ryman's original complaint also included an individual claim for loss of consortium. However, that claim was dismissed by Stipulation of Dismissal filed June 15, 2009 [Doc. 105] because on August 21, 2008 she filed for Chapter 7 bankruptcy and her individual claims were transferred to the bankruptcy trustee by

operation of law and dismissed by the Trustee. The only remaining claim is a statutory wrongful death claim.

In order to recover in this suit brought under the Price Anderson Act, Plaintiff must show that Lowell Ryman "was exposed to chemicals that could have caused the physical injuries [she] complains about (general causation), and that his exposure did in fact result in those injuries (specific causation)." *Wilcox v. Homestake Mining Co.*, 2008 U.S. Dist. LEXIS 110321 (D.N.M. 2008). As demonstrated below, any inability by Plaintiff to provide Rule 26 expert reports supporting general and specific causation within the generous, previously extended deadline set by the Court, is not due to any conduct by Zia or lack of opportunity to review LANL's documents, most of which are in the public domain and have been extensively studied by Plaintiff and her designated experts. Instead, the failure is due to the absence of evidence to support the claim that Lowell Ryman was exposed to radiation as a child living in Los Alamos. Therefore, Plaintiff's Motion to Extend Deadlines fails to establish good cause for a second extension of the deadline for Rule 26 expert disclosures and should be denied.

## II. PLAINTIFF HAS NOT SHOWN GOOD CAUSE FOR EXTENDING CASE MANAGEMENT DEADLINES.

### A. Plaintiff Has Had Ample Time and Access to Information to Prepare Expert Disclosures.

Plaintiff filed suit on April 8, 2008. [Doc. 1]. On September 10, 2008, the Court held a scheduling conference in which the parties were directed to reach agreement on a schedule for phased discovery in the case. A follow-up scheduling conference was held on December 10, 2008 which resulted in the entry of the Court's Case Management Order. *See* [Doc. 61]. Under the original Case Management Order, Plaintiff was required to identify her experts by January 15, 2009 and provide Rule 26(a)(2)(B) reports nine months later on September 18, 2009. *Id.* As

that deadline for expert reports approached in August 2009, Plaintiffs requested a seven month extension of the deadline. That request was unworkable and unreasonable, and Defendants proposed a two-month extension of the expert disclosures and other deadlines. *See* August 26, 2009 e-mail to Michael Howell, a copy of which is attached hereto as Exhibit A. A compromise was reached in which the parties agreed to extend by three months Plaintiff's expert disclosure date and an agreed order was entered extending the deadline to December 17, 2009. *See* [Doc. 125].

Plaintiff has had ample time to provide Fed.R.Civ.P. Rule 26(a)(2)(B) expert reports and has not shown good cause for a second extension of the Court's December 17, 2009 deadline. Plaintiff designated eight experts to testify in this case on general and specific causation and there has been an insufficient showing by Plaintiff and her experts regarding their inability to provide expert reports 20 months after suit was filed. As demonstrated by the chronology of document discovery shown when Plaintiff proposed a 7 month extension of time to provide expert reports, Plaintiff has been provided comprehensive and timely document production requested in this case from LANL. *See* Exhibit A.

Although Plaintiff's Motion suggests that there have been delays in document production, it is important to note that ***none*** of Plaintiff's complaints are directed at Zia. Nor is Plaintiff really claiming that delay in document production by LANL prevented her experts from timely preparing their reports. Instead, Plaintiff claims that it took 150 "computer hours" to convert the electronic documents produced by LANL into a database that could be searched and that commitments to other clients have prevented counsel from devoting time to this case.[1] *See* Motion at p. 6-7. Neither excuse supports the "good cause" required under Rule 16 for granting a second extension of the expert disclosure deadline. *See Mann v. Fernandez*, 615 F. Supp 2d

---

[1] Since computers work on a 24/7/365 basis, this translates to less than a week to create a text searchable database.

1277 (D.N.M. 2009) (showing of "good cause" under Rule 16 means that the scheduling deadlines cannot be met despite a party's diligent efforts.").

Plaintiff's Motion fails to establish due diligence in attempting to comply with the Court's deadline since no explanation is given regarding the work done by any of her eight experts during the 20 months the case has been pending or the 11 months since they were designated. One of Plaintiff's designated experts has apparently done sufficient work for him to list this case as one in which he has provided expert testimony, but the Motion does not present any affidavit from him or 7 of the 8 experts designated by Plaintiff. *See* List of Litigation Experience by Marco Kaltofen, P.E., a copy of which is attached hereto as Exhibit B. The Motion also fails to explain what documents still need to be analyzed or what additional work her eight experts must perform in order to prepare Rule 26 reports containing the requisite "statement of all opinions to be expressed and the basis and reasons therefor." The Motion only offers an affidavit from just one of Plaintiff's eight experts and Plaintiff's counsel, neither of which contains the information needed by the Court to assess whether Plaintiff has exercised due diligence in attempting to comply with the existing schedule. *Cf., Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) (Affidavit filed under Rule 56(f) must identify probable facts not available and what steps have been taken to obtain these facts).

Even if Plaintiff's experts are unable to comply with Rule 26(a)(2) and provide a report containing the opinions of Plaintiff's experts, Plaintiff's motion also fails to explain why her experts could not timely comply with the remaining disclosures required by Rule 26. Plaintiff's experts are required to disclose "a list of all publications authored by the witness within the preceding ten years, the compensation to be paid for the study and testimony, and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the

4

preceding four years." Since Plaintiff has failed to provide sufficient explanation for her eight experts inability to comply with the other mandatory disclosure requirements of Rule 26, she should not be allowed a second extension of the expert disclosure deadline.

The 1993 Advisory Committee Notes to Rule 26 warns litigants, "revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." In *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 681 (D. Kan. 1995), the court held, "The requirements of Rule 26(a) are mandatory as to any expert retained to testify. If the expert is unable or unwilling to make the disclosures he should be excluded as a possibility for retention as an expert witness in the case." Indeed, the consequences of failing to comply with the strict requirements of Rule 26 can be severe. *See Waltrip v. Assoc. of Mutual Protection and Mutual Benefit of the Community of Cerro de Guadalupe,* 2005 U.S.Dist. LEXIS 467775 at *5 (D.N.M. 2005)(striking untimely expert disclosure).

When expert reports are not timely filed, the Court has broad discretion to decide if the Rule 26(a) violation is justified or harmless. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (district court abused its discretion in refusing to strike expert reports which did not comply with Rule 26(a)); *see also* Fed. R. Civ. P. 37(c)(1). Factors the Court should consider include: (a) any prejudice or surprise to the party against whom the testimony is offered; (b) the ability of the party to cure any prejudice; (c) the extent to which introducing the testimony would disrupt the trial; and (d) the violator's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *see also Gutierrez v. Hackett*, 131 Fed. Appx. 621 (10th Cir. May 3, 2005) (case arising in the District of New Mexico; Tenth Circuit upholds trial court's exclusion of late expert report). Any problems

experienced by Plaintiff are not attributable to Zia and Zia would clearly be prejudiced by extending the expert disclosure deadlines a second time in a case it never should have been named as defendant.

### B. Plaintiff Has Had Access to a Trove of Information to Prepare Expert Reports.

There is also reason to doubt Plaintiff's proffered excuse for seeking an extension of the deadline--that Plaintiff has not had sufficient time to review LANL documents needed to support causation opinions. LANL's documents have been the subject of a long-standing project to "systematically review all available documents related to Los Alamos Laboratory operations and identify records that contribute information about releases of chemicals and radionuclides from the site between 1943 to the present" known as the Los Alamos Historical Document Retrieval & Assessment project ("LAHDRA"). *See* www.lahdra.org. "The [LAHDRA] project has access to LANL records that is unprecedented for an independent group studying potential off-site health hazards." *Id*. The LAHDRA project documents are available for review by the public in Zimmerman Library at the University of New Mexico and there is also a user-friendly electronic database that allows for full text searching of the documents in the database. *See* http://www.lahdra.org/docsleuth.htm ("DocSleuth is an application designed to search PDF documents using full-text search with powerful filters."). At a 2004 public meeting discussing the progress of document review under the auspices of the LAHDRA project, it was reported:

> We have given you as much information as we have—nothing more or less. You have it all. You have access to all the documents we have released. They are housed at the Zimmerman Library at the University of New Mexico in Albuquerque.

*See* http://www.lahdra.org/meetings/mtg_12_CDC/CDC_meeting_summary.pdf (June 27, 2004 LAHDRA Meeting Summary). Plaintiff herself apparently reviewed these records, telling the

6

press that before filing suit "she moved to New Mexico for a few months to do research in basement archives of Zimmerman Library at the University of New Mexico."  *See* "Deadly Exposure: Plutonium-Related Cancers Plague Children of the Manhattan Project," SANTA FE NEW MEXICAN (May 4, 2008), attached hereto as Exhibit C.

Plaintiff and her experts have clearly had access to all the documents necessary to form opinions regarding general and specific causation.  Although Plaintiff designated eight experts, the only expert who submitted a declaration or affidavit in support of Plaintiff's motion suggests that the Lab's document production is incomplete because he did not find documents he believes to exist.  *See* Motion, p. 6.  However, the only way Plaintiff's expert can "know" that the documents exist is if he has already seen those documents.  No showing has been made as to whether Plaintiff's other experts have reviewed the documents in the LAHDRA database, or what additional documents that were the subject of a request for production to the Regents have yet to be reviewed.  Moreover, given the volume of documents it is extremely unlikely that any expert is going to actually review every single document produced in the case and no explanation offered why Plaintiff's eight experts were unable to search the multiple document sources available to find the information needed to prepare reports.

### III. PLAINTIFF'S INABILITY TO PREPARE CAUSATION EXPERT REPORTS IS REALLY DUE TO THE ABSENCE OF CREDIBLE EVIDENCE OF ANY EXPOSURE TO RADIATION BY LOWELL RYMAN DURING THE THREE YEARS HE LIVED IN LOS ALAMOS.

The Complaint in this case was filed with ominous allegations claiming LANL's historical operations had contaminated the canyons surrounding LANL, harming Lowell Ryman

and other children of workers on the Manhattan Project, with the apparent intent of generating sufficient publicity to turn the case into a class action,[2] alleging:

> Lowell Edward Ryman played extensively in the canyons surrounding the residential areas on Walnut Street, including: Walnut Canyon, Pueblo Canyon, and Acid Canyon. Lowell Edward Ryman was exposed to ionizing radiation by coming in contact with contaminated materials, by drinking contaminated water, by breathing contaminated air, by eating contaminated food, by bathing and washing in contaminated water, and/or by engaging in recreational activities in or near contaminated sites with public access.

Complaint, ¶20. However, these allegations were flatly contradicted by the testimony of Lowell Ryman's siblings. Their testimony confirmed that Lowell Ryman confined his activities to the canyon next to their home on Walnut Street--Walnut Canyon which has never been identified as an area containing any radioactive waste or other toxic materials.

Lowell Ryman's oldest sister, Patricia Ryman Moore, testified that Plaintiff had made several false claims concerning her brother's activities. Specifically she testified that they never ate fish and that Lowell never drank the water: "it didn't happen, I can tell you that." When asked if Lowell ever played in Acid Canyon she testified "Oh no, he was never down there. No, no, no" and that "this Acid Canyon, thing, he was never in there, we never were, we didn't go that far from home." She also testified that Walnut Canyon and the other canyons were all fenced off and had signs which conveyed the message of keep out or no trespassing. *See* Deposition of Patricia Ryman Moore, relevant excerpts of which are attached hereto as Exhibit D, 87:14-21; 88:3-13; 181:1-3, 17-182:23.

Barbara Mulholland, Lowell Ryman's sister who was closest to him in age and was the executrix of his estate, testified that Lowell didn't really have any relationship with Rene after he was divorced from her mother and had no contact with Rene for almost 20 years. She confirmed

---

[2] New reports quoted Plaintiff's counsel as stating that "If enough people come forward, there's a chance we could do a medical-monitoring class action." *See* Exhibit C.

8

the testimony of her older sister that they would play in Walnut Canyon in the summer going over a fence with signs facing the residential area that said keep out. *See* Deposition of Barbara Mulholland, relevant excerpts of which are attached hereto as Exhibit E, 30:11-23; 31:6-13; 33:18-34:3; 36:3-13; 37:9-23; 152:13-23; 195:20-196:2. Ms. Mulholland testified they never played in any canyon other than Walnut canyon which had only trickles of water in it after it rained and that Lowell never hiked or fished in any other canyons, and that they never ate fish. *Id*., 35:15-24; 136:5-11; 204:11-21; 205:11-16.

Ms. Mulholland cared for her brother after he was diagnosed with multiple myeloma, living with him in his home and he never expressed concerns that his multiple myeloma resulted from being exposed to something at Los Alamos. *Id*., 130:22-131:22. Lowell Ryman also never said he wanted to bring a lawsuit and she was certain that he wouldn't have wanted the lawsuit to go forward. *Id*., 143:15-24. Lowell's younger brother, William Ryman, who lived near him in Illinois and saw him often when he was sick, testified that Lowell never indicated that he thought a lawsuit should be filed, never expressed concerns about what may have caused his multiple myeloma and that he didn't think his brother would have wanted to pursue the lawsuit. *See* Deposition of William Ryman, relevant excerpts of which are attached hereto as Exhibit F, 118:12-24; 125:13-24. Lowell's younger sister similarly testified that Lowell never expressed any concern that his multiple myeloma was caused by something he was exposed to in Los Alamos. *See* Deposition of Kay Halbmaier, relevant excerpts of which are attached hereto as Exhibit G, 67:16-19. She further testified that Lowell never indicated that he wanted to file a lawsuit, stating that "My brother would never do that. If he knew this was going on, he'd roll over in his grave." *Id*., 67:20-68:1.

## IV. CONCLUSION.

This is a case which the decedent did not want to be brought, and which never should have been brought against Zia (or the Regents). A second extension of time allowing Plaintiff additional time to present expert reports is unwarranted and the Court should deny Plaintiff's Motion to Extend Deadlines.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
 & SISK, P.A.

By: */s/ Earl E. DeBrine, Jr.*
 Tim Fields
 Earl E. DeBrine, Jr.
 Joan D. Marsan
 Attorneys for Zia Company
 Post Office Box 2168
 500 Fourth Street NW, Suite 1000
 Albuquerque, New Mexico 87103-2168
 Telephone: (505) 848-1800

WE HEREBY CERTIFY that on the 4th day of January, 2010, we filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served electronically:

Michael T. Howell, mhowell@reichandbinstock.co
Dennis C. Reich, dreich@reichandbinstock.com
Kaitlin Clark, kclark@rbh-law.com
David J. Jaramillo, david@gaddyfirm.com
Maria E. Touchet, mia@gaddyfirm.com
Bruce Hall, bhall@rodey.com
W. Mark Mowery, wmmowery@rodey.com
Edward R. Ricco, ericco@rodey.com
Theresa W. Parrish, tparrish@rodey.com
Thomas A. Outler, toutler@rodey.com
Jocelyn C. Drennan Drennanjdrennan@rodey.com

MODRALL, SPERLING, ROEHL,
    HARRIS & SISK, P.A.

By: */s/ Earl E. DeBrine, Jr.*
    Earl E. DeBrine, Jr.

K:\dox\client\14155\5010\W1131759.DOCX